IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| STILLWATER MINING COMPANY d/b/a SIBAYNE STILLWATER LIMITED,<br><br>Plaintiff,<br><br>vs.<br><br>PRUDENTIAL RETIREMENT INSURANCE AND ANNUITY COMPANY and JOHN DOES 1–10,<br><br>Defendants. | CV 25-139-BLG-TJC<br><br>**ORDER** |

This action was originally brought by Plaintiff Stillwater Mining Company d/b/a Sibayne Stillwater Limited ("Stillwater") in the Montana Twenty-Second Judicial District Court, Stillwater County (DV-48-2025-0000063-OC) on September 29, 2025, against Defendant Prudential Retirement Insurance and Annuity Company ("Prudential")[1] and John Does 1–10.  (Doc. 7.)  Prudential timely removed the action to this Court, invoking diversity jurisdiction under 28 U.S.C. § 1332.  (Doc. 1.)

/ / /

---

[1]  Prudential states that it is now legally known as Empower Annuity Insurance Company (Doc. 5 at 1); however, it has not moved to amend the case's caption.  Accordingly, and for the sake of clarity and simplicity, the Court will refer to Defendant as "Prudential".

1

Presently before the Court is Prudential's motion to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Doc. 4.)  The motion is fully briefed and ripe for the Court's review.  (*See* Docs. 5, 11, 15.)  For the following reasons, the Court finds Prudential's motion should be **GRANTED** in part and **DENIED** in part.

## I.   BACKGROUND

When considering a motion to dismiss under Rule 12(b)(6), a court must accept all material allegations in the complaint as true.  *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).  The following facts are taken from Stillwater's Complaint (Doc. 7).

Stillwater operates mines and related facilities in Montana.  It employs, and has employed, thousands of Montanans in its operations.  Stillwater maintains an employer-sponsored, defined-contribution 401(k) retirement plan ("the Plan") for its non-union employees.

In 2014, Stillwater moved management of the Plan from Massachusetts Mutual Life Insurance Company to Prudential and its affiliates.  Stillwater entered into a Services Agreement ("the Agreement") as well as a Trust Agreement and Investment Agreement with Prudential and its affiliates.  The Agreement outlines services that Prudential would provide to Stillwater, including mapping Stillwater's old plan to Prudential's prototype or specimen, providing notices to

Stillwater and Plan participants, and providing various other documents regarding the Plan to Stillwater.

Despite holding itself out as an expert in the management of retirement plans of this kind, Stillwater alleges Prudential failed to properly map the Plan. Stillwater further alleges Prudential actively and intentionally concealed this fact by providing Stillwater with inaccurate documentation.  Stillwater claims Prudential's actions necessitated Stillwater to, among other things, make "true-up" contributions as well as increased and unnecessary tax payments to keep the Plan in compliance.

Stillwater's Complaint presents four causes of action: breach of contract (Count I); negligence (Count II); negligent misrepresentation (Count III); and breach of the implied covenant of good faith and fair dealing (Count IV).

## II.    LEGAL STANDARD

"Dismissal under Rule 12(b)(6) is proper only when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." *Li v. Kerry*, 710 F.3d 995, 999 (9th Cir. 2013).  The Court's standard of review under Rule 12(b)(6) is informed by Rule 8(a)(2), which requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)).

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* at 678 (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A plausibility determination is context-specific, and courts must draw on judicial experience and common sense in evaluating a complaint. *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014).

A court considering a Rule 12(b)(6) motion must accept as true the allegations of the complaint and must construe those allegations in the light most favorable to the nonmoving party. *See, e.g.*, *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998). Nevertheless, "bare assertions . . . amount[ing] to nothing more than a 'formulaic recitation of the elements' . . . for the purposes of ruling on a motion to dismiss, are not entitled to an assumption of truth." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Such assertions do nothing more than state a legal conclusion, even if the conclusion is cast in the form of a factual allegation. *Id.*

/ / /

/ / /

4

## III.    DISCUSSION

### A.    Consideration of Materials Outside of the Pleadings

In general, a court cannot consider materials outside of the pleadings when deciding a motion to dismiss under Rule 12(b)(6) without converting the motion into one for summary judgment under Rule 56. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018). An exception to this general rule is the incorporation-by-reference doctrine, which provides that "[e]ven if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). *See also Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) ("A court may consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion."). "The defendant may offer such a document, and the district court may treat such a document as part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *Ritchie*, 342 F.3d at 908.

Stillwater did not attach anything to its Complaint. Nevertheless, Stillwater's Complaint refers extensively to the Agreement, and it is central to its case. Prudential included portions of the Agreement as a 46-page attachment to its

brief in support of its motion to dismiss.  (Doc. 5-1.)  In its response to Prudential's motion, Stillwater also included portions of the Agreement as a 21-page attachment.  (Doc. 11-1.)  The first seventeen pages of the parties' attachments are identical[2]; the first eight pages are the Agreement itself, and the next nine pages are Exhibit A to the Agreement.  The remaining four pages of Stillwater's attachment are Exhibits B and C to the Agreement.  (*Id.* at 18–21.)  Prudential's attachment omits Exhibit B and proceeds to Exhibit C, followed by Exhibits D and E, as well as various amendments to the Agreement and other documents related to the Plan.  (Doc. 5-1 at 18–46.)

While the parties' attachments differ somewhat, it is nevertheless clear that Stillwater's Complaint necessarily incorporates and relies upon the Agreement and Exhibit A, as these documents comprise the contract that Counts I and IV are premised upon.  Neither party suggests that the documents attached by the other party are inauthentic, and the briefings from both parties discuss the contract and its provisions at length.  It does not appear, however, that Exhibit B (included by Stillwater but omitted by Prudential), nor the additional Exhibits, amendments, and other documents attached by Prudential are materials upon which the Complaint necessarily relies, as neither the Complaint nor the parties' briefings reference

---

[2]  The only difference being that, in Stillwater's attachment, Prudential's signature lines are blank, whereas they are filled out in Prudential's attachment.

them.  Accordingly, for the purposes of deciding the instant motion, the Court will consider the contents of the Agreement and Exhibit A (Doc. 11-1 at 1–17) as incorporated by reference into Stillwater's Complaint, without converting Prudential's motion to dismiss into one for summary judgment.

### B.    Contract Claims – Counts I and IV

In its opening brief, Prudential analyzes Stillwater's contract claims under Connecticut law because § F.7 of the Agreement, titled Governing Law, provides: "This Agreement shall be governed by and construed in accordance with the laws of Connecticut applicable to agreements made and to be performed entirely within Connecticut, except the choice of law rules." (*Id.* at 6.)  Stillwater disputes Prudential's interpretation of this provision and argues that its contract claims should be analyzed under Montana law.  (Doc. 11 at 10–13.)

When a motion to dismiss can be decided without resolving a choice-of-law issue, courts avoid making unnecessary choice-of-law determinations.  *In re Shoot the Moon, LLC*, 2020 WL 6588407, at *5 (Bankr. D. Mont. Nov. 6, 2020).  "Such judicial restraint comports with the prohibition on federal courts issuing advisory opinions."  *Id.*  Choice-of-law determinations are "necessary only when a difference in the law will result in a different outcome."  *Id.  See also Mays Grp., Inc. v. AT&T Corp.*, 2005 WL 8177153, at *3 (D. Or. Aug. 16, 2005) (finding resolution of choice-of-law issue premature because motion to dismiss could be

decided without determining what state's law applies).

The parties agree that the elements of breach of contract are essentially the same in Connecticut and Montana.  Both parties also maintain they should prevail regardless of whether the contract claims are analyzed under Connecticut or Montana law.  (Doc. 11 at 13; Doc. 15 at 4.)

Under Connecticut law, "[t]he elements of a breach of contract claim are the formation of an agreement, performance by one party, breach of the agreement by the other party, and damages." *AGW Sono Partners, LLC v. Downtown Soho, LLC*, 273 A.3d 186, 196 (Conn. 2022) (citations omitted).  "[A] plaintiff [can]not recover contract damages under [an] agreement 'unless he has fully performed his own obligation under it, has tendered performance, or has some legal excuse for not performing.'" *David M. Somers & Assocs., P.C. v. Busch*, 927 A.2d 832, 839 (Conn. 2007) (quoting *DiBella v. Widlitz*, 541 A.2d 91, 93 (Conn. 1988)).

Under Montana law, "[t]he essential elements of a breach of contract claim are: (1) a valid and enforceable contract; (2) breach of an express or implied contract duty or obligation; and (3) resulting contract damages." *Kostelecky v. Peas in a Pod, LLC*, 518 P.3d 840, 859 (Mont. 2022).  Additionally, Mont. Code Ann. § 28-1-406 provides that "[b]efore a party to an obligation can require another party to perform any act under it, the party shall fulfill all conditions precedent to the act imposed upon that party . . . ."

Given that the law of Connecticut and Montana relative to breach of contract is substantially the same, and that both parties assert that choice-of-law is not determinative of this motion, the Court need not, at this juncture, make a choice-of-law determination. *See In re Apple Inc. Device Performance Litig.*, 386 F. Supp. 3d 1155, 1170 (N.D. Cal. 2019) ("Courts have declined to conduct such an analysis at the motion to dismiss stage where further development of the record is necessary to properly decide the choice-of-law question."); *In re Clorox Consumer Litig.*, 894 F. Supp. 2d 1224, 1237 (N.D. Cal. 2012) (finding a detailed choice-of-law analysis would be inappropriate at the pleading stage); *Lindland v. TuSimple, Inc.*, 2022 WL 687148, at *4–5 (S.D. Cal. Mar. 8, 2022) (declining to resolve choice-of-law issue where a fuller factual record was needed to make a definitive choice-of-law determination).

### 1.    Breach of Contract (Count I)

Prudential argues that Stillwater fails to adequately state a claim in Count I because Stillwater "[1] does not identify the specific provision of the Agreement [Prudential] purportedly breached, [2] does not allege facts showing its own performance under the Agreement, and [3] goes far outside the Agreement's available relief in its prayers for damages." (Doc. 5 at 13–14.) With respect to the latter two arguments, Prudential maintains that Stillwater failed to allege compliance with § E and § F.4 of the Agreement, which govern indemnity, error

9

correction, and notice of errors.  (*Id.* at 14–18.)  Accordingly, Prudential contends that since "Stillwater does not allege that it ever gave notice, made a written claim, or that it acted within the Agreement's contractual time limits[, Stillwater] does not allege compliance with the only provision that provides a remedy for the injuries it claims, [and] it has failed to plead breach of any contractual duty at all."  (*Id.* at 17–18.)  With respect to damages, Prudential argues that the damages Stillwater seeks are foreclosed by the indemnity provision of § E.1, which "expressly limits recovery to 'actual damages and reasonable out-of-pocket legal fees and expenses.'"  (*Id.* at 18.)

Stillwater counters that its Complaint references specific portions of the Agreement that Prudential allegedly breached.  (Doc. 11 at 13–15.)  Stillwater also argues that § E and § F.4 of the Agreement do not apply, and therefore its failure to seek redress under these sections does not preclude its breach of contract claim (*id.* at 15–22), and the damages it seeks are not foreclosed by the Agreement (*id.* at 22–25).

The Court will address these issues in turn.

### a.   Whether Stillwater Alleges Prudential Breached its Contractual Obligations

Prudential argues that "Stillwater tellingly fails to identify any specific provision of the Agreement that [Prudential] purportedly breached."  (Doc. 5 at 14.)  While it is true that Stillwater's Complaint does not cite specific contract

provisions, it does identify several duties assigned to Prudential under the Agreement and quotes verbatim language from the Agreement regarding these duties.  (*See* Doc. 7, ¶¶ 13, 14, 17, 18, 23.)

The purpose of a complaint is to put the opposing party on fair notice of the claims against it.  *Lynn v. Sheet Metal Workers' Int'l Ass'n*, 804 F.2d 1472, 1482 (9th Cir. 1986).  Stillwater's references to Prudential's duties under the Agreement are sufficiently specific to put Prudential on fair notice of the ways in which Stillwater alleges Prudential has failed to uphold its contractual obligations. Stillwater also adequately presents factual allegations regarding Prudential's alleged breaches to plausibly state a claim.  It alleges that Prudential provided inaccurate notices to Stillwater and failed to correct erroneous information; Prudential provided inaccurate plan descriptions and plan amendments; and then Prudential concealed its wrongdoing and the damages its acts and omissions caused.  (Doc. 7 at 4.)

Since Stillwater adequately alleges both the contractual provisions and a factual basis for its breach of contract claim, Prudential's argument that Stillwater's Complaint is deficient for failure to cite specific provisions of the Agreement is unavailing.

/ / /

/ / /

### b.    Whether Stillwater Alleges Performance of its Contractual Obligations

Prudential argues that Stillwater cannot maintain its breach of contract claim because it does not allege that it complied with the "Indemnification" and "Notice of Errors" provisions of § E and § F.4 of the Agreement.  (Doc. 5 at 15–18.) Prudential contends that Stillwater's failure to allege that it sought redress through the mechanisms in these provisions means that Stillwater has not alleged its own performance under the contract, and therefore it has not pled all the necessary elements of breach of contract.

"Resolution of contractual claims on a motion to dismiss is proper if the terms of the contract are unambiguous."  *Bedrosian v. Tenet Healthcare Corp.*, 208 F.3d 220 (9th Cir. 2000).  *Accord Prysmian Cables & Sys. USA LLC v. ADT Com. LLC*, 665 F. Supp. 3d 236, 244 (D. Conn. 2023) ("[U]nder Connecticut law, a court may dismiss a breach of contract claim only if the terms of the contract are unambiguous.").  A motion to dismiss should not be granted where the contract plausibly "leaves doubt as to the parties' intent."  *Stocco v. Gemological Inst. of Am., Inc.*, 975 F. Supp. 2d 1170, 1179 (S.D. Cal. 2013) (citing *Consul Ltd. v. Solide Enters., Inc.*, 802 F.2d 1143, 1149 (9th Cir. 1986)).  *See also Coleman v. Alaska USA Fed. Credit Union*, 2020 WL 1866261, at *4 (D. Alaska Apr. 14, 2020) (stating that where it is plausible that the contract is reasonably susceptible of two meanings, "the contract may be ambiguous and defendant's motion to

dismiss plaintiff's breach of contract claim must be denied").

The Court finds that it is not clear that the "Indemnification" provision in § E of the Agreement applies to Stillwater's claims.  Section E provides for Prudential's obligation to defend and indemnify the Plan for certain errors and omissions.  The first paragraph of § E provides that Prudential "agrees to pay costs associated with the correction of Prudential's administrative errors or omissions in the performance of services listed in Exhibit A . . . provided that [Stillwater] agrees to a reasonable error correction method within ten (10) business days of receiving written notice of the proposed correction method."  (Doc. 11-1 at 4.)

Stillwater argues that this section pertains to the correction of administrative errors, not a wholesale breach of Prudential's fundamental duties and obligations under the Agreement.  (Doc. 11 at 16.)  Additionally, Stillwater points out that this provision is limited to administrative errors in the performance of services listed in Exhibit A, while Stillwater alleges violations of other provisions of the Agreement.

The Court agrees that it is not clear whether the errors alleged in the Complaint constitute "administrative errors" within the meaning of § E.  Stillwater alleges a breach of Prudential's fundamental duties and obligations under the Agreement, and that it also "actively and intentionally concealed both its wrongdoing and the damages caused thereby."  (Doc. 7, ¶ 17.)  Therefore, Stillwater does not allege a discrete administrative error, but that Prudential's

13

"breaches and errors, and the damages cause thereby, occurred each and every day that it managed the Plan and continue to this day." (*Id.* ¶ 16.)

In the second paragraph of § E, Prudential agrees to indemnify the Plan for losses resulting from "any specific act of negligence or willful misconduct by Prudential," provided a proper claim is made under the "benefits claims procedure of the Plan," and provided the claim is made within certain time parameters. (Doc. 11-1 at 4.) Under the provision, a claimant is required to make a claim within "(a) sixty (60) days from the mailing of a trade confirmation, account statement, or other document, from which the error can be discovered, but in any event within (b) one year from the transaction related to the purported error." (*Id.*)

Stillwater argues that this provision applies to errors in individual claims for benefits under the Plan, not to Stillwater's claim that Prudential failed to perform its fundamental obligation to map and administer the Plan. The Court agrees that this provision can plausibly be construed in that manner. The provision pertains to a "specific act" of negligence or misconduct, relating to a transaction that would be reflected in an account statement or trade confirmation.

The same is true for § F.4 of the Agreement, titled "Notice of Errors." That provision states that all information provided to [Stillwater] "will be deemed correct if notice of any error or discrepancy is not given to Prudential . . . as soon as reasonably possible following identification of the error or discrepancy[.]" (*Id.*

at 5.)  It also provides that "Participants must notify Prudential of errors or discrepancies in a quarterly statement no later than the time period specified in such statement."  (*Id.*)  This provision appears to provide a presumption of correctness of information provided by Prudential, and a notice provision for participants regarding errors in quarterly statements provided by Prudential.  It does not, however, purport to provide the exclusive remedy or condition precedent for suit for Prudential's breach of the underlying services Agreement.

In any event, whether Prudential is correct that Stillwater only alleges Prudential acted in ways that would trigger the error correction and indemnification mechanisms in §§ E and F.4, or whether, as Stillwater argues, the allegations in its Complaint relate to breaches of obligations not covered by those sections, is not clear from Agreement itself.  This is particularly true when all inferences based on facts in the Complaint must be drawn in Stillwater's favor.  To accept Prudential's position, the Court would have to resolve a contractual ambiguity in favor of Prudential, which the Court is not able to do on a Rule 12(b)(6) motion to dismiss.

Whether Prudential will ultimately prevail on its theory that Stillwater's breach of contract claim is foreclosed by its own nonperformance of the §§ E and F.4 requirements is not the issue currently before the Court, and the Court takes no position on the merits of the parties' contract claims and defenses.  Instead,

drawing all factual inferences in Stillwater's favor, the Court finds it plausible that at least some of the breaches Stillwater alleges are not covered by the provisions of §§ E and F.4, and therefore Stillwater's failure to allege it followed the error notice procedures outlined in those provisions does not equate to the failure to allege its own performance under the contract.

### c.     Whether Stillwater Properly Alleges Damages

It is clear from the face of Stillwater's Complaint that it pleads factual allegations related to damages.  (*See* Doc. 7, ¶¶ 20, 25.)  Thus, Prudential does not argue that Stillwater has failed to plead damages, but instead that Stillwater's breach of contract claim fails because the relief it seeks is contractually barred. (Doc. 5 at 19.)

In support of its contention that "[f]ederal courts routinely dismiss damages claims at the pleadings stages when those damages are foreclosed by the operative contract," Prudential cites three exemplary cases. (*Id.*)  While Prudential's contention as to the law is not wrong as a general proposition, the cases it cites demonstrate why the dismissal of Stillwater's damages claims at this stage of the proceedings would be premature.  Each of the cases Prudential cites pertain to a contractual provision that explicitly limits the parties' abilities to seek damages for the contract as a whole.  *See, e.g.*, *Key Tronic Corp. v. Cognitive LLC*, 2025 WL 452613, at *9 (E.D. Wash. Feb. 10, 2025) (dismissing claim for incidental

damages where contractual language provided "Buyer shall not be liable to supplier for any indirect, incidental, or consequential damages whatsoever resulting in any way from this agreement . . . ."); *Serenity Lane v. Netsmart Techs., Inc.*, 2015 WL 3862527, at *6 (D. Or. June 22, 2015) (dismissing plaintiff's claims for incidental and consequential damages on grounds that plaintiff was bound by contract that stated "In no event will [defendant] be liable for any indirect, special incidental, cover, or contract damages . . . ."); *VeriFone, Inc. v. A Cab, LLC*, 2015 WL 6443126, at *3 (D. Nev. Oct. 23, 2015) (dismissing breach of contract claim where a party only sought consequential damages but the parties' agreement provided "neither party shall be liable to the other party . . . for any indirect, special, punitive, exemplary, incidental or consequential damages").

Here, the language Prudential upholds for the proposition that it has contractually limited all recoverable damages under the Agreement is far less conclusive. Prudential cites to a sentence that appears at the end of the indemnification provisions in § E.1: "Prudential's liability will be limited to actual damages and reasonable out-of-pocket legal fees and expenses only." (Doc. 11-1 at 5.) But rather than being a standalone provision relating to liability under the contract generally, this sentence appears in a section related only to error correction and indemnification. (*Id.* at 4–5.) Prudential may ultimately prevail on its contention that this sentence precludes the damages Stillwater seeks. But at this

17

stage, the Court finds this language is ambiguous because it could plausibly apply to all damages under the Agreement, or only to those damages relating to violations of § E. To dismiss Stillwater's damages—and thereby its breach of contract claim—the Court would have to resolve this ambiguity in Prudential's favor, which, as explained above, it cannot do. Accordingly, the Court finds that Stillwater's breach of contract claim includes an adequate allegation of damages.

In sum, Stillwater's Complaint contains sufficient allegations to plausibly allege a breach of contract claim against Prudential, whether analyzed under Connecticut or Montana law.

### 2. Breach of the Implied Covenant of Good Faith and Fair Dealing (Count IV)

Prudential argues that Stillwater fails to state a claim for breach of the implied covenant of good faith and fair dealing because Stillwater "fails to allege that [Prudential] exercised any discretion under the Agreement or engaged in any conduct that could plausibly be characterized as undertaken in bad faith." (Doc. 5 at 22.) Stillwater counters that it has pled the necessary elements of its claim by alleging that "Prudential acted in bad faith, that it used its discretion to hide from Stillwater its own failures to comply with the terms of the Agreement, and that those actions have caused Stillwater harm." (Doc. 11 at 27.) As with Count I, although the parties disagree as to whether Connecticut or Montana law applies, the parties each assert that they would prevail under either state's law. (Doc. 15 at

18

15; Doc. 11 at 25.)

Under both Connecticut and Montana law, all contracts contain an implied covenant of good faith and fair dealing. *Story v. City of Bozeman*, 791 P.2d 767, 775 (Mont. 1990); *Renaissance Mgmt. Co. v. Conn. Hous. Fin. Auth.*, 915 A.2d 290, 297–98 (Conn. 2007). "In essence, the covenant is a mutual promise implied in every contract that the parties will deal with each other in good faith, and not attempt to deprive the other party of the benefits of the contract through dishonesty or abuse of discretion in performance." *Beaverhead Bar Supply, Inc. v. Harrington*, 805 P.2d 560, 564 (Mont. 1991). *Accord De La Concha of Hartford, Inc. v. Aetna Life Ins. Co.*, 849 A.2d 382, 388 (Conn. 2004). A breach of the covenant of good faith and fair dealing must therefore involve bad faith on the part of the breaching party. *Landry v. Spitz*, 925 A.2d 334, 344 (Conn. App. Ct. 2007). "Bad faith in general implies both actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive. . . . Bad faith means more than mere negligence; it involves a dishonest purpose." *De La Concha*, 849 A.2d at 388 (alteration in original) (citations omitted).

Here, Count IV of Stillwater's Complaint incorporates by reference the allegations from the preceding paragraphs (Doc. 7, ¶ 42), including the allegation

19

that Prudential actively and intentionally concealed its alleged wrongdoing by providing inaccurate documents to Stillwater (*id.* ¶ 17–18).  While the facts pled regarding this alleged cover-up are not extensive, taking the inferences that can be drawn therefrom in Stillwater's favor, the Complaint plausibly alleges that Prudential acted in bad faith to mislead Stillwater, with the intention of depriving it of the benefits of the Agreement.  Further, to the extent Connecticut law requires that the conduct arise from a discretionary act, Stillwater has plausibly alleged Prudential used discretion by actively concealing its alleged wrongdoing.

Therefore, the Court finds that Stillwater has sufficiently stated a claim for breach of the implied covenant of good faith and fair dealing.

## C.    Tort Claims – Counts II and III

Both parties take the position that Stillwater's tort claims are properly analyzed under Montana law.  (Doc. 5 at 22; Doc. 11 at 27.)  Prudential argues that Stillwater's tort claims fail as a matter of law because all of Stillwater's negligence allegations arise solely from Prudential's contractual duties under the Agreement. (Doc. 5 at 24.)  Stillwater counters that Prudential had a non-contractual duty "to act in a reasonable manner and in accordance with all applicable laws and standards of care," and that its negligence claims are predicated on a violation of this duty.  (Doc. 11 at 29.)

/ / /

A party can bring tort claims alongside breach of contract claims so long as the tort liability is predicated on the breach of a duty that existed independently of contractual duties. *Dewey v. Stringer*, 325 P.3d 1236, 1239 (Mont. 2014). "There is a fundamental difference between breaching a contractual duty and committing a tort. . . . Contract obligations are based on the manifested intention of the parties to a bargaining transaction, whereas tort obligations are imposed by law—apart from and independent of promises made and therefore apart from the manifested intention of the parties—to avoid injury to others." *Id.* at 1243 (quoting *Abraham v. T. Henry Constr., Inc.*, 249 P.3d 534, 538 (Or. 2011)) (internal punctuation omitted).

While "[t]he breach of a purely contractual duty does not constitute the sort of 'active negligence or misfeasance' necessary to impose liability under tort law," it is nevertheless possible that "negligence liability may exist even if the parties have entered into [a] contract concerning the same subject matter." *Id.* (citing *Garden City Floral Co. v. Hunt*, 255 P.2d 352, 356 (Mont. 1953)). *See also Plakorus v. Univ. of Mont.*, 477 P.3d 311, 316 (Mont. 2020) ("merely because a contractual relationship exists that gives rise to a set of events and a relationship between parties does not mean the only duties existing between those parties with respect to those events are in contract"). To determine whether a party has adequately alleged a negligence claim in this scenario, Montana courts look to the

21

gravamen of the plaintiff's complaint, rather than the labels the plaintiff attaches to their claims. *Id.* "When the plaintiff alleges a duty imposed by law that does not depend on a contractual provision or breach of a contractual obligation, 'the gravamen of the action is the breach of the legal duty rather than a breach of the contract, and so is a tort.'" *Id.* at 318 (quoting *Billings Clinic v. Peat Marwick Main & Co.*, 797 P.2d 899, 908 (Mont. 1990)).

Accordingly, the Court will look to the substance of Counts II and III to determine if Stillwater has sufficiently pled negligence-based tort claims that allege Prudential breached legal duties, rather than purely contractual ones.

### 1.    Negligence (Count II)

Prudential argues that Stillwater's negligence claim fails because its allegations arise solely from duties prescribed to Prudential in the Agreement. (Doc. 5 at 24.)  Stillwater counters that Prudential had duties imposed by Montana statutory law independent of the Agreement that required it to act in a reasonable manner when mapping and managing the Plan. (Doc. 11 at 29.)  Stillwater states that the applicable legal duty violated by Prudential was Montana's general duty of care, imposed by Mont. Code Ann. § 28-1-201. (*Id.*)  Stillwater's Complaint alleges four specific ways Prudential failed to act reasonably and in accordance with its legal duties: (1) not using due care in mapping and servicing the Plan; (2) not ensuring the Plan remained in legal compliance; (3) providing Stillwater with

22

false and inaccurate information; and (4) demanding and receiving overcompensation.  (Doc. 7 at 6.)

In *Plakorus*, the Montana Supreme Court considered whether the plaintiff, Plakorus, could maintain tort causes of action against his former employer, the University of Montana.  The court found that Plakorus's claims for the mishandling of his employment information sounded only in contract because the University's duty to manage this information "would not exist in the absence of a contract."  *Plakorus*, 477 P.3d at 317 (quoting *Milky Whey, Inc. v. Dairy Partners, Inc.* 342 P.3d 13, 18 (Mont. 2015)).  In contrast, the court held that Plakorus's claims for defamation and tortious interference sufficiently alleged tort liability because "the University's acts and his injuries do not depend upon promises made in his employment contract."  *Id.* at 318.  The key distinction the court identified was between conduct that was contemplated in the contract at issue and other actions "entirely independent of the conduct contemplated by the parties' [] contract."  *Id.*

Similarly, in *Romo v. Shirley*, 522 P.3d 401, 408–09 (Mont. 2022), the Montana Supreme Court distinguished between liability in contract and tort where parties have a contractual relationship.  In *Romo*, farmers entered into contracts with the defendants to grow hemp in exchange for payment.  After the farmers met their contractual obligations by growing the hemp, the defendants made false

23

statements about the availability and timing of funds to pay the farmers. The court held that although the farmers and the defendants had a contract, the defendants' repeated false statements occurred after a breach of the contract occurred, thus the farmers could sue the defendants in tort for their misrepresentations.

Here, Stillwater's factual allegations of Prudential's negligence relate only to conduct that was contemplated by the Agreement, not to separate legal duties. The mapping of the Plan, furnishing of information regarding the Plan, keeping the Plan in legal compliance, and payment of compensation are all matters explicitly addressed in the Agreement. (Doc. 11-1 at 2–3, 9–12.) Prudential's alleged failures to perform these contractual duties therefore render it potentially liable only for breach of contract, not tort. Unlike the situation in *Romo*—where the defendants were under a contractual duty only to render payment, not to make representations about the payments—the allegedly false information Prudential provided to Stillwater was done in the course of Prudential's performance of its contractual duties to deliver periodic notices regarding the Plan. Similarly, Prudential's entitlement to receive compensation, fees, and expenses from Stillwater arose solely from the Agreement. Thus, any improper payments relate to breaches of the Agreement, not a separate legal duty.

Therefore, because Stillwater has failed to adequately allege that Prudential breached a legal, rather than a contractual duty, its claim for negligence must be

24

dismissed.

### 2.    Negligent Misrepresentation (Count III)

As to Stillwater's claim for negligent misrepresentation, Prudential presents essentially the same argument as to Count II: any duties allegedly violated relate solely to the Agreement, not to a separate legal duty.  In its reply brief, Prudential also contends, for the first time, that Count III does not meet Federal Rule of Civil Procedure 9(b)'s heightened standards for pleading fraud.

Negligent misrepresentation is a claim grounded in fraud that must, in accordance with Rule 9(b), be pled "with particularity [regarding] the circumstances constituting fraud or mistake." *Deveraux v. Meadowlark of Billings LLC*, 2023 WL 2330311, at *2 (D. Mont. Mar. 2, 2023) (quoting Fed. R. Civ. P. 9(b)).  Accordingly, a claim for negligent misrepresentation must be specific enough to give the defendant notice of the particular misconduct that allegedly constitutes fraud.  *Id.*; *see also United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1180 (9th Cir. 2016) ("the plaintiff must allege the who, what, when, where, and how of the misconduct charged, including what is false or misleading about a statement, and why it is false") (internal citations and quotations omitted).

Whether the plaintiff has adequately given such notice "is a fact-specific inquiry that takes into account the characteristics of the parties and the circumstances of the representations." *Deveraux*, 2023 WL 2330311, at *2.  In

circumstances where an alleged fraudulent scheme occurred over a long period of time or involved numerous transactions, courts relax Rule 9(b)'s heightened standard somewhat to allow for the fact that pleading every single instance of fraudulent conduct would be impractical. *See, e.g., In re Pharm. Indus. Average Wholesale Price Litig.*, 478 F. Supp. 2d 164, 171–72 (D. Mass. 2007); *Gelco Corp. v. Duval Motor Co.*, 2002 WL 31875537, at \*6 (N.D. Ill. Dec. 26, 2002); *United States ex rel. Butler v. Magellan Health Servs.*, 74 F. Supp. 2d 1201, 1215 (M.D. Fla. 1999). "Perhaps the most basic consideration for a federal court in making a judgment as to the sufficiency of a pleading for purposes of Rule 9(b) is the determination of how much detail is necessary to give adequate notice to an adverse party and to enable that party to prepare a responsive pleading." 5A Charles Alan Wright & Aruther R. Miller, *Federal Practice and Procedure* § 1298 (4d ed. 2026).

In Montana, a claim for negligent misrepresentation consists of the following elements:

> (1) the defendant made a representation as to a past or existing material fact; (2) the representation must have been untrue; (3) regardless of its actual belief, the defendant must have made the representation without any reasonable ground for believing it to be true; (4) the representation must have been made with the intent to induce the plaintiff to rely on it; (5) the plaintiff must have been unaware of the falsity of the representation; it must have acted in reliance upon the truth of the representation and it must have been justified in relying upon the representation; (6) the plaintiff, as a result of its reliance, must sustain damage.

*Deveraux*, 2023 WL 2330311, at *5 (quoting *Morrow v. Bank of Am., N.A.*, 324 P.3d 1167, 1180 (Mont. 2014)). Accordingly, Stillwater must have pled all of these elements with sufficient particularity in order to properly state a claim for negligent misrepresentation.

Count III incorporates all preceding paragraphs of the Complaint and specifically alleges two ways in which Prudential made negligent misrepresentations: "Prudential made false representations to Stillwater as to their expertise to appropriately service the Plan *and* as to the nature and accuracy of Stillwater's employer contributions to the Plan." (Doc. 7, ¶ 36) (emphasis added).

The first grounds on which Stillwater bases its negligent misrepresentation claim is clearly insufficient to meet the standards of Rule 9(b). Aside from the above-quoted language, the only other factual allegation contained in the Complaint as to Prudential's representations regarding its expertise is: "At all times, Prudential held themselves out as experts in, and capable to perform, all services and obligations contained in the Agreement and related documents." (*Id.* ¶ 12.) Missing from this allegation is any information as to when specifically representations regarding Prudential's expertise and capability were made, by whom, to whom, and in what manner. Therefore, Stillwater's claim that Prudential is liable for negligently misrepresenting its ability to manage the Plan is insufficiently pled.

The Complaint contains substantially more factual information to support Stillwater's second allegation, regarding misrepresentations as to "the nature and accuracy of Stillwater's employer contributions to the Plan." (*Id.* ¶ 36.)  But this basis for holding Prudential liable in tort also fails—not because of Rule 9(b)'s heightened pleading standards, but because, as explained above, Prudential's duties to relay information regarding the nature and accuracy of Stillwater's contributions to the Plan necessarily arose from Prudential's obligations under the Agreement, not from an independent legal duty Prudential owed to Stillwater.

Accordingly, the Court finds that Count III fails to state a claim upon which relief can be granted.

### D.    Leave to Amend

If a Rule 12(b)(6) motion to dismiss is granted, claims may be dismissed with or without prejudice, and with or without leave to amend.  Ordinarily, leave to amend should be granted unless "the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)).  As the Ninth Circuit has made clear, "[i]t is black-letter law that a district court must give plaintiffs at least one chance to amend a deficient complaint, absent a clear showing that amendment would be futile." *Nat'l Council of La Raza v. Cegavske*, 800 F.3d 1032, 1041 (9th Cir. 2015).

28

Prudential argues that Stillwater's Complaint should be dismissed with prejudice because Stillwater could not possibly provide factual amendments that would properly state any of its claims.  (Doc. 15 at 16–17.)  The Court disagrees. It is possible Stillwater could provide additional facts regarding its negligence and negligent representation claims to plausibly allege that Prudential had a legal duty to it outside of obligations under the Agreement.

Therefore, Stillwater will be given fourteen (14) days within which to file an amended complaint that cures the deficiencies outlined above.  If no amended complaint is filed within that time, Counts II and III of the Complaint will be dismissed with prejudice.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## IV.   CONCLUSION

Based on the foregoing, **IT IS HEREBY ORDERED** Prudential's motion to dismiss (Doc. 4) is **GRANTED** in part and **DENIED** in part as follows:

1.  Prudential's motion to dismiss Counts I and IV is denied.

2.  Counts II and III of Stillwater's Complaint are dismissed without prejudice and with leave to amend.  If Stillwater chooses to file an amended complaint, it must do so within 14 days of this Order, or the Court will dismiss these claims with prejudice.

DATED this 8th day of June, 2026.

_____
TIMOTHY J. CAVAN
United States Magistrate Judge